1  STUART C. PLUNKETT (CA SBN 187971)
   SPlunkett@mofo.com
2  DEVON EDWARDS (CA SBN 264833)
   DEdwards@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California  94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Plaintiff
   JOHN M. MCGRAW

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

   JOHN M. MCGRAW,                          Case No.
11

12              Plaintiff,

13        v.                               **COMPLAINT FOR
                                           INDEMNIFICATION AND
14  WESTERN SERVICE CONTRACT CORP., a       ADVANCEMENT**
    California corporation, THE MCGRAW
15  COMPANY, a California corporation, and
    PACIFIC SPECIALTY INSURANCE
16  COMPANY, a California corporation,

17              Defendants.

18

19

20        Plaintiff John M. McGraw, through his undersigned attorneys, brings this complaint for

21  indemnification and advancement of attorneys' fees and expenses against Defendants Western

22  Service Contract Corp. ("WSCC"), The McGraw Company, and Pacific Specialty Insurance

23  Company (collectively, "Defendants" or "the McGraw companies"), and alleges as follows:

24                    **NATURE OF THE ACTION**

25        1.    This is an action for <u>indemnification</u> for attorneys' fees and expenses that John

26  McGraw has incurred and continues to incur in a civil proceeding brought against him by reason

27  of his employment as a director of the McGraw companies; for <u>advancement</u> of attorneys' fees

28

1   and expenses in that action; and for <u>attorneys' fees and expenses in this action</u> to secure such

2   indemnification and advancement.

3         2.    Ann Morrical brought a cross-complaint against Mr. McGraw on March 21, 2013,

4   in an action that was pending in the Superior Court of San Mateo County.  The cross-complaint

5   challenges actions that Mr. McGraw and other directors took during board meetings of the

6   McGraw companies on March 12 and March 15, 2012.  Although as a director John McGraw is

7   entitled to indemnification pursuant to the companies' bylaws, Defendants and Mr. McGraw

8   separately entered into a written "Indemnification Agreement" on March 12, 2012, specifically in

9   connection with the board's actions that are the subject of Ms. Morrical's cross-complaint.  That

10  agreement unambiguously sets forth Mr. McGraw's entitlement to (a) indemnification,

11  (b) advancement, and (c) expenses in this action.  Despite Mr. McGraw's repeated requests for

12  indemnification and advancement in connection with the cross-complaint and his submission of

13  an undertaking to repay advances found not subject to indemnification, the McGraw companies

14  have refused to honor the Indemnification Agreement.  Mr. McGraw was thus left with no

15  alternative but to file this action.

16        3.    As expressly set forth in the Agreement, Mr. McGraw bargained for and obtained

17  his rights to indemnification and advancement in exchange for, and as a condition to, his

18  continued service as a director of the McGraw companies.  Indemnification and advancement are

19  separate legal and contractual rights.  With respect to advancement, the Indemnification

20  Agreement's requirements are mandatory and Mr. McGraw's right to advancement is perfected

21  upon written request.  Mr. McGraw made such written request and has satisfied all conditions to

22  his right to receive advancement.  The McGraw companies have nonetheless refused to honor

23  their contractual obligation.  If a corporation withholds advances, the right to advancement is

24  eviscerated and rendered meaningless because at the conclusion of the litigation, the indemnified

25  party will only be entitled to indemnity.  Absent an order from this Court enforcing the

26  advancement provisions of the Indemnity Agreement, Mr. McGraw's contractual, bargained for

27  right to advancement will be irretrievably lost and Mr. McGraw will suffer irreparable harm.  The

28

failure to receive advances for incurred litigation expenses pursuant to an indemnity agreement constitutes immediate and direct injury to the indemnitee.

## THE PARTIES

4.      Plaintiff JOHN M. MCGRAW is an individual residing in Las Vegas, Nevada. John McGraw is, and at all times relevant to this complaint was, a member of the board of directors of WSCC and The McGraw Company.

5.      Defendant WESTERN SERVICE CONTRACT CORP. is a California corporation with its principal place of business at 3601 Haven Avenue, Menlo Park, California 94025. WSCC is part of the McGraw family of companies.

6.      Defendant THE MCGRAW COMPANY is a California corporation with its principal place of business at 3601 Haven Avenue, Menlo Park, California 94025.  The McGraw Company is part of the McGraw family of companies.

7.      Defendant PACIFIC SPECIALTY INSURANCE CO. is a California corporation with its principal place of business at 3601 Haven Avenue, Menlo Park, California 94025.  PSIC is one of the McGraw family of companies.

## JURISDICTION

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because complete diversity of citizenship exists between the plaintiff and the defendants and the amount in controversy exceeds $75,000, exclusive of costs and interest.

## VENUE

9.      Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(b), because the defendants are residents of this District and because the Indemnification Agreement entered into by the parties specifies the Northern District of California as the proper venue for the purpose of any federal action arising from that Agreement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FACTUAL ALLEGATIONS

### Securities Complaint

10.     John McGraw, and his sister Ann Morrical, were sued by their brother Michael McGraw in March 2010 in San Mateo Superior Court in an action entitled *McGraw v. McGraw, et al.*, Case No. CIV 492464.  Michael McGraw sued both in his personal capacity and also derivatively on behalf of WSCC and The McGraw Company.  His complaint asserted a number of legal claims arising out of John McGraw's and Ann Morrical's votes, as directors, in favor of certain "phantom stock plans" which provided deferred contingent compensation to certain of the companies' senior executives.

11.     Article VII of the WSCC bylaws provides that a person "who is or was a director, officer, employee, or other agent" of the corporation shall be indemnified against reasonable expenses, including attorneys' fees and any "expenses of establishing a right to indemnification," incurred "by reason of the fact that such person is or was" sued in an action or proceeding as an agent of Western.  John McGraw accordingly sought indemnification from Western on April 12, 2010.  By letter dated April 14, 2010, Western agreed to indemnify John McGraw "for all defense expenses associated with defending [himself] in the action."  Later, on March 24, 2011, Western and the McGraw Company entered into a "Repayment of Defense Expenses Agreement" with John McGraw in which they waived any bond or undertaking obligation and agreed to continue "to advance such defense expenses," including legal fees, in the action.

### Ann Morrical's Cross-Complaint

12.     In June 2012, Ann Morrical sought leave to file a cross-complaint in the underlying "phantom stock plan" action.  Leave was subsequently granted by the court. Ms. Morrical filed the cross-complaint against John McGraw on March 21, 2013, alleging two causes of action—for breach of contract and for declaratory relief.

13.     Both causes of action are based on, and directly challenge, actions that John McGraw took as a director of the McGraw companies.  The cross-claims are expressly based on allegations concerning meetings of the boards of directors of the McGraw companies that took

COMPLAINT
sf-3335570

4

place on March 12 and March 15, 2012.  According to the cross-complaint, at the March 12, 2012 board meeting, John McGraw voted to expand the number of directors from three to eight; voted in support of the appointment of five individuals nominated by Altamont Capital, a private equity firm, as new directors; and caused the companies to enter into a management agreement with Altamont that purportedly gave Altamont "day-to-day control of Western and McGraw."  The cross-complaint alleges:  "By the end of this meeting, John had attempted to cause Altamont to gain, and John asserted that it had gained, total control of the Boards of Directors, and total control of day-to-day management."

14.    The cross-complaint also attacks John McGraw's votes as a director in favor of various actions taken at board meetings on March 15, 2012.  At those meetings, the directors approved the formation of an "Executive Committee," approved a variety of changes to the companies' articles of incorporation and bylaws, and elected John Chu as chairman of the boards of directors of the various McGraw companies.  Each of these board actions is expressly referenced in Ms. McGraw's cross-claims.

**Indemnification Agreement**

15.    WSCC's indemnification obligations under Article VII of its bylaws extend to John McGraw's expenses incurred in defense of Ann Morrical's cross-complaint.  However, to ensure that the McGraw companies would indemnify Mr. McGraw in connection with any claims arising out of the board decisions occurring in March 2012, Mr. McGraw and the McGraw companies negotiated and entered into a separate Indemnification Agreement *specifically in connection with those transactions*.  (*See* Exhibit A hereto.)  The agreement, entered into between the parties on March 12, 2012—the same day as the board votes Ms. Morrical challenges in her cross-complaint—provides that the "Companies shall, to the fullest extent permitted by law, indemnify Indemnitee [John McGraw] with respect to . . . all losses, liabilities, judgments, fines, penalties, costs, Expenses . . . and other amounts that Indemnitee reasonably incurs and that result from, arise in connection with or are by reason of Indemnitee's Corporate Status . . . and shall advance Expenses to Indemnitee."  (Exhibit A, ¶ 2.)

16.     Paragraph 3 of the Indemnification Agreement states:  "If in connection with or by reason of Indemnitee's Corporate Status Indemnitee was . . . or is . . . a party to or a participant in any Proceeding . . . the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to  . . . all Expenses, liabilities, judgments, penalties, fines and amounts paid in settlement . . . reasonably incurred by Indemnitee or on behalf of Indemnitee in connection with such Proceeding or any claim, issue or matter therein, if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in, or not opposed to, the best interests of the applicable Company . . . ."  (Exhibit A, ¶ 3.)

17.     All of these elements are satisfied with respect to Ann Morrical's cross-complaint. John McGraw is a defendant to Ms. Morrical's cross-action by reason of the fact that he was a director of the McGraw companies.  The cross-complaint specifically challenges John McGraw's votes made as director of the McGraw companies.  The Indemnification Agreement defines "Corporate Status" as including "past, present, or future service as a director or officer of any of the Companies."  (Exhibit A, ¶ 14(c).)

18.     John McGraw has actually incurred "Expenses" in connection with the cross-action.  "Expenses" include "all reasonable direct and indirect costs, fees and expenses of any type or nature whatsoever and shall specifically include, without limitation, all reasonable attorney's fees . . . and all other disbursements or expenses of the types customarily incurred in connection with . . . defending, preparing to . . . defend, investigating, being or preparing to be a witness, in, or otherwise participating in, a Proceeding . . . ."  (Exhibit A, ¶ 14(f).)  "Proceeding" includes "any actual, threatened, pending or completed action," which includes the cross-complaint by Ann Morrical.  (*See* Exhibit A, ¶ 14(i).)  As of August 31, 2013, John McGraw had incurred $665,442 for his ongoing defense of Ms. Morrical's cross-complaint.  Those amounts are reflected in detailed invoices provided to counsel for the McGraw companies.  Additional fees and expenses were incurred in September and October 2013 and are expected to be incurred each month until the cross-complaint is resolved.  None of these amounts has been paid.

19.     Separately, the Indemnification Agreement includes a mandatory advancement provision that obligates the McGraw companies to advance "on a current and as-incurred basis all

Expenses incurred" by John McGraw. (Exhibit A, ¶ 8.) Paragraph 8 provides: "The Companies shall, to the fullest extent permitted by law, pay on a current and as-incurred basis all Expenses incurred by Indemnitee in connection with any Proceeding in any way connected with, resulting from or relating to Indemnitee's Corporate Status. Such Expenses shall be paid in advance of the final disposition of such Proceeding, without regard to whether Indemnitee will ultimately be entitled to be indemnified for such Expenses . . . ." (Exhibit A, ¶ 8.)

20.     The McGraw companies' mandatory obligation to advance fees to John McGraw is triggered when Mr. McGraw requests advancement. "Upon submission of a request for advancement of Expenses . . . Indemnitee shall be entitled to advancement of Expenses. . . ." (Exhibit A, ¶ 8; *see also* ¶ 2 ("[T]he Companies **. . .** shall advance Expenses to Indemnitee" that he "reasonably incurs and that result from, arise in connection with or are by reason of Indemnitee's Corporate Status.").) The Agreement further states: "To obtain advancement of Expenses under this Agreement, Indemnitee shall submit to the Companies a written request therefor, together with such invoices . . . and, only to the extent required by applicable law which cannot be waived, an unsecured written undertaking to repay amounts advanced." (Exhibit A, ¶ 9(c)(i).) Mr. McGraw first made a written request for indemnification for fees and expenses in connection with the cross-complaint on July 9, 2013, and he subsequently made several additional requests before filing this complaint. On September 24, 2013, Mr. McGraw also provided an undertaking to repay the advances "if and to the extent that it shall ultimately be determined . . . that [he] is not entitled to be indemnified" for expenses incurred defending the cross-complaint. (Exhibit A, ¶ 9.)

21.     Finally, the Indemnification Agreement entitles John McGraw to recover as "Expenses" fees and costs incurred in connection with this action to enforce the Indemnification Agreement. Paragraph 9(f) states that Mr. McGraw shall "have the right to commence a Proceeding . . . to require the Companies to make" required advances, and that Mr. McGraw "shall be entitled to be indemnified for all Expenses incurred in connection with such a Proceeding and to have such Expenses advanced by the Company." (Exhibit A, ¶ 9(f).) Similarly, Paragraph 7(a) includes as "Expenses" amounts "reasonably incurred by Indemnitee in

connection with any action or proceeding . . . brought by Indemnitee for . . . indemnification or advance payment of Expenses by the Companies under this Agreement . . . ." (Exhibit A, ¶ 7(a).) Paragraph 13 provides that John McGraw is entitled to "indemnification or advancement of Expenses under this Agreement . . . to enforce Indemnitee's rights under this Agreement or . . . to enforce any other rights of Indemnitee to indemnification, advancement or contribution from the Companies under any other contract, by-laws or charter or under statute or other law." (Exhibit A, ¶ 13.)

### FIRST CLAIM FOR RELIEF
#### (Breach of Contract — Indemnification)

22.     John McGraw incorporates by reference paragraphs 1 through 21 of this Complaint as if fully set forth herein.

23.     John McGraw and the McGraw companies entered into the Indemnification Agreement, attached hereto as Exhibit A, on March 12, 2012.

24.     The Indemnification Agreement is an enforceable contract.

25.     Paragraph 2 of the Indemnification Agreement states that "the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to . . . costs, Expenses . . . and other amounts that Indemnitee reasonably incurs and that result from, arise in connection with or are by reason of Indemnitee's Corporate Status . . . and shall advance Expenses to Indemnitee." (Exhibit A, ¶ 2.)

26.     Paragraph 3 of the Indemnification Agreement states:  "If in connection with or by reason of Indemnitee's Corporate Status Indemnitee was . . .  or is . . . a party to or a participant in any Proceeding . . . the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to  . . . all Expenses . . .  reasonably incurred by Indemnitee or on behalf of Indemnitee . . . if Indemnitee acted in good faith and in a manner [he] reasonably believed to be in, or not opposed to, the best interests of the applicable Company. . . ." (Exhibit A, ¶ 3.)

27.     Ann Morrical's cross-complaint, filed on March 21, 2013, is based on and directly challenges actions that John McGraw took as a director of the McGraw companies.

28.     The Indemnification Agreement requires that the McGraw companies indemnify John McGraw for all expenses he has incurred and will continue to incur defending the cross-claims of Ms. Morrical.

29.     Demand for indemnification and payment, as well as invoices supporting the total indemnification owed to John McGraw for defending the cross-complaint have been provided to the McGraw companies.

30.     The McGraw companies have refused indemnification, and no payments have been received.

31.     The McGraw companies' refusal to indemnify Mr. McGraw and their failure to pay Mr. McGraw have resulted in damages to Mr. McGraw and will continue to damage Mr. McGraw absent an order requiring indemnification and payment.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract — Advancement)

32.     John McGraw incorporates by reference paragraphs 1 through 31 of this Complaint as if fully set forth herein.

33.     John McGraw and the McGraw companies entered into the Indemnification Agreement, attached hereto as Exhibit A, on March 12, 2012.

34.     The Indemnification Agreement is an enforceable contract.

35.     Paragraph 8 of the Indemnification Agreement provides that "[t]he Companies shall, to the fullest extent permitted by law, pay on a current and as-incurred basis all Expenses incurred by Indemnitee in connection with any Proceeding in any way connected with, resulting from or relating to Indemnitee's Corporate Status.  Such Expenses shall be paid in advance of the final disposition of such Proceeding, without regard to whether Indemnitee will ultimately be entitled to be indemnified . . . . Upon submission of a request for advancement of Expenses . . . Indemnitee shall be entitled to advancement of Expenses."  (Exhibit A, ¶ 8.)

36.     Paragraph 2 of the Indemnification Agreement states that "the Companies . . . shall advance Expenses to Indemnitee " that he "reasonably incurs and that result from, arise in connection with or are by reason of Indemnitee's Corporate Status . . . ."  (Exhibit A, ¶ 2.)

37.     John McGraw has made written requests for advancement.

38.     John McGraw has provided an undertaking to repay the advances "if and to the extent that it shall ultimately be determined . . . that [he] is not entitled to be indemnified" for expenses incurred defending the Cross-Complaint.

39.     John McGraw has satisfied all obligations under the Indemnification Agreement to obtain advancement of expenses with respect to Ms. Morrical's cross-complaint.

40.     The McGraw companies have breached the Indemnification Agreement by refusing to advance to Mr. McGraw his expenses in connection with the cross-complaint.

41.     Defendants' breach has caused harm to Mr. McGraw.  Defendants' breach will irreparably harm Mr. McGraw unless enjoined.  Mr. McGraw has a contractual right to advancement that is irretrievably lost absent a preliminary injunction.

**THIRD CLAIM FOR RELIEF**
**(Entitlement to Expenses for this Action)**

42.     John McGraw incorporates by reference paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.     John McGraw and the McGraw companies entered into the Indemnification Agreement, attached hereto as Exhibit A, on March 12, 2012.

44.     The Indemnification Agreement is an enforceable contract.

45.     Paragraph 9(f) of the Indemnification Agreement entitles John M. McGraw to "have the right to commence a Proceeding . . . to require the Companies to make such payments or advances" and states that he "shall be entitled to be indemnified for all Expenses incurred in connection with such a Proceeding and to have such Expenses advanced by the Company." (Exhibit A, ¶ 9(f).)

46.     Paragraph 13 of the Indemnification Agreement provides that John McGraw is entitled to "indemnification or advancement of Expenses under this Agreement . . . to enforce [his] rights under this Agreement or . . . to enforce any other rights of [his] to indemnification, advancement or contribution from the Companies under any other contract, by-laws or charter or under statute or other law."  (Exhibit A, ¶ 13.)

47.     John McGraw was compelled to file this Complaint because the McGraw companies have not honored his demands for indemnification and advancement for the expenses he has incurred and will continue to incur defending the cross-complaint.

48.     Given that Mr. McGraw was forced to seek judicial intervention to vindicate his clear right to indemnification and advancement, he is entitled to recover the reasonable fees incurred in this action pursuant to the terms of the Indemnification Agreement.

## PRAYER FOR RELIEF

WHEREFORE, John M. McGraw respectfully requests that this Court enter judgment in his favor against the defendants and grant him the following relief:

A.  an Order declaring that John McGraw is entitled to indemnification from Defendants for the reasonable attorneys' fees and expenses he has incurred and will incur in defending the cross-complaint;

B.   an Order declaring the John McGraw is entitled to advancement from Defendants for reasonable attorneys' fees and expenses he incurs to defend the cross-complaint;

C.  an Order declaring that John McGraw is entitled to reasonable attorneys' fees and expenses he incurs in bringing this action;

D.  an Order declaring that John McGraw is entitled to prejudgment interest on the reasonable attorneys' fees and expenses for which Defendants have failed to advance or indemnify Mr. McGraw, including reasonable attorneys' fees and expenses incurred in this action;

E.  a preliminary and permanent injunction directing Defendants (i) to advance John McGraw the reasonable attorneys' fees and expenses he incurs to defend the cross-complaint; (ii) to indemnify him for the reasonable attorneys' fees and expenses he has incurred and will incur in defending the cross-complaint; (iii) to pay him the reasonable attorneys' fees and expenses incurred with this action; and (iv) to pay him the prejudgment interest on the unpaid advancement and indemnification; and

1      F.   such other further relief as this Court may deem just and proper.

2

3   Dated:  November 4, 2013              STUART C. PLUNKETT
                                          DEVON EDWARDS
4                                         MORRISON & FOERSTER LLP

5

6                                    By:    /s/ Stuart C. Plunkett
                                          STUART C. PLUNKETT
7
                                          Attorneys for Plaintiff
8                                         JOHN M. MCGRAW

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

*Execution Version*

# INDEMNIFICATION AGREEMENT

This Indemnification Agreement ("Agreement") is made and entered into as of this 12th day of March 2012, by and among Western Service Contract Corp., a California corporation ("Western"), The McGraw Company, a California corporation ("McGraw") and Pacific Specialty Insurance Company, a California corporation (together with Western and McGraw, the "Companies"), and John M. McGraw ("Indemnitee").

WHEREAS, in light of the litigation costs and risks to directors and officers resulting from their service to companies, and the desire of the Companies to attract and retain qualified individuals to serve as directors, it is reasonable, prudent and necessary for each of the Companies to indemnify and advance expenses on behalf of its directors and/or officers to the extent permitted by applicable law so that they will serve or continue to serve the Companies free from undue concern regarding such risks;

WHEREAS, the Companies have requested that Indemnitee serve or continue to serve as a director and/or officer of each of the Companies and may have requested or may in the future request that Indemnitee serve one or more McGraw Entities (as hereinafter defined) as a director or officer or in other capacities; and

WHEREAS, Indemnitee is willing to serve as a director and/or officer of each of the Companies on the condition that Indemnitee be so indemnified.

NOW, THEREFORE, in consideration of the premises and the covenants contained herein, the Companies and Indemnitee do hereby covenant and agree as follows:

1.    <u>Services by Indemnitee</u>.  Indemnitee will serve or continue to serve as a director and/or officer of one or more of the Companies.  Indemnitee may at any time and for any reason resign from such position (subject to any contractual obligation under any other agreement or any obligation imposed by operation of law).

2.    <u>Indemnification - General</u>.  On the terms and subject to the conditions of this Agreement, the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to, and hold Indemnitee harmless from and against, all losses, liabilities, judgments, fines, penalties, costs, Expenses (as hereinafter defined) and other amounts that Indemnitee reasonably incurs and that result from, arise in connection with or are by reason of Indemnitee's Corporate Status (as hereinafter defined) and shall advance Expenses to Indemnitee.  The obligations of the Companies under this Agreement (a) are joint and several obligations of each Company, (b) shall continue after such time as Indemnitee ceases to serve as a director or officer of the Companies or in any other Corporate Status, and (c) include, without limitation, claims for monetary damages against Indemnitee in respect of any actual or alleged liability or other loss of Indemnitee, to the fullest extent permitted under applicable law as in existence on the date hereof and as amended from time to time.

3.    <u>Proceedings Other Than Proceedings by or in the Right of the Companies</u>.  If in connection with or by reason of Indemnitee's Corporate Status Indemnitee was, is, or is threatened to be made, a party to or a participant in any Proceeding (as hereinafter defined) other

than a Proceeding by or in the right of any of the Companies to procure a judgment in its favor, the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to, and hold Indemnitee harmless from and against, all Expenses, liabilities, judgments, penalties, fines and amounts paid in settlement (including all interest, assessments and other charges paid or payable in connection with or in respect of such liabilities, judgments, penalties, fines and amounts paid in settlement) reasonably incurred by Indemnitee or on behalf of Indemnitee in connection with such Proceeding or any claim, issue or matter therein, if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in, or not opposed to, the best interests of the applicable Company and, with respect to any criminal Proceeding, had no reasonable cause to believe Indemnitee's conduct was unlawful.

4.      <u>Proceedings by or in the Right of the Companies</u>.  If by reason of Indemnitee's Corporate Status Indemnitee was, is, or is threatened to be made, a party to or a participant in any Proceeding by or in the right of any of the Companies to procure a judgment in its favor, the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to, and hold Indemnitee harmless from and against, all Expenses reasonably incurred by Indemnitee or on behalf of Indemnitee in connection with such Proceeding if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in, or not opposed to, the best interests of the applicable Company; <u>provided</u>, <u>however</u>, that indemnification against such Expenses shall be made in respect of any claim, issue or matter in such Proceeding as to which Indemnitee shall have been adjudged by a court of competent jurisdiction to be liable to the applicable Company only if (and only to the extent that) the court in which such Proceeding shall have been brought or is pending (the "<u>Trial Court</u>") shall determine that despite such adjudication of liability and in light of all circumstances such indemnification may be made.

5.      <u>Mandatory Indemnification in Case of Successful Defense</u>.  Notwithstanding any other provision of this Agreement, to the extent that Indemnitee is, by reason of Indemnitee's Corporate Status, a party to (or a participant in) and is successful, on the merits or otherwise, in defense of any Proceeding (including, without limitation, any Proceeding brought by or in the right of any Company), the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to, and hold Indemnitee harmless from and against, all Expenses reasonably incurred by Indemnitee or on behalf of Indemnitee in connection therewith.  If Indemnitee is not wholly successful in defense of such Proceeding but is successful, on the merits or otherwise, as to one or more but less than all claims, issues or matters in such Proceeding, the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee against all Expenses reasonably incurred by Indemnitee or on behalf of Indemnitee in connection with each successfully resolved claim, issue or matter.  For purposes of this <u>Section 5</u> and without limitation, the termination of any claim, issue or matter in such a Proceeding by dismissal, with or without prejudice, on substantive or procedural grounds, shall be deemed to be a successful result as to such claim, issue or matter.

6.      <u>Partial Indemnification</u>.  If Indemnitee is entitled under any provision of this Agreement or otherwise to indemnification by any of the Companies for some or a portion of the Expenses, liabilities, judgments, penalties, fines and amounts paid in settlement (including all interest, assessments and other charges paid or payable in connection with or in respect of such liabilities, judgments, penalties, fines and amounts paid in settlement) incurred by Indemnitee or on behalf of Indemnitee in connection with a Proceeding or any claim, issue or matter therein, in

whole or in part, the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee to the fullest extent to which Indemnitee is entitled to such indemnification.

7.      Indemnification for Additional Expenses Incurred to Secure Recovery or as Witness.

(a)      The Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to, and hold Indemnitee harmless from and against, any and all Expenses and, if requested by Indemnitee, shall advance on an as-incurred basis (as provided in Section 8 of this Agreement) such Expenses to Indemnitee, which are reasonably incurred by Indemnitee in connection with any action or proceeding or part thereof brought by Indemnitee for (i) indemnification or advance payment of Expenses by the Companies under this Agreement, any other agreement, the Certificate of Incorporation or By-laws of the applicable Company as now or hereafter in effect; or (ii) recovery under any director and officer liability insurance policies maintained by any Entity.

(b)      To the extent that Indemnitee is, by reason of Indemnitee's Corporate Status, a witness (or is forced or asked to respond to discovery requests) in any Proceeding to which Indemnitee is not a party, the Companies shall, to the fullest extent permitted by law, indemnify Indemnitee with respect to, and hold Indemnitee harmless from and against, and the Companies will advance on an as-incurred basis (as provided in Section 8 of this Agreement), all Expenses reasonably incurred by Indemnitee or on behalf of Indemnitee in connection therewith.

8.      Advancement of Expenses.  The Companies shall, to the fullest extent permitted by law, pay on a current and as-incurred basis all Expenses incurred by Indemnitee in connection with any Proceeding in any way connected with, resulting from or relating to Indemnitee's Corporate Status.  Such Expenses shall be paid in advance of the final disposition of such Proceeding, without regard to whether Indemnitee will ultimately be entitled to be indemnified for such Expenses and without regard to whether an Adverse Determination has been or may be made, except as contemplated by the last sentence of Section 9(f) of this Agreement.  Upon submission of a request for advancement of Expenses pursuant to Section 9(c) of this Agreement, Indemnitee shall be entitled to advancement of Expenses as provided in this Section 8, and such advancement of Expenses shall continue until such time (if any) as there is a final non-appealable judicial determination that Indemnitee is not entitled to indemnification. Indemnitee shall repay such amounts advanced if and to the extent that it shall ultimately be determined in a decision by a court of competent jurisdiction from which no appeal can be taken that Indemnitee is not entitled to be indemnified by the Companies for such Expenses.  Such repayment obligation shall be unsecured and shall not bear interest.  The Companies shall not impose on Indemnitee additional conditions to advancement or require from Indemnitee additional undertakings regarding repayment.

9.      Indemnification Procedures.

(a)      Notice of Proceeding.  Indemnitee agrees to notify the Companies promptly upon being served with any summons, citation, subpoena, complaint, indictment, information or other document relating to any Proceeding or matter which may be subject to indemnification or advancement of Expenses hereunder.  Any failure by Indemnitee to notify any Company will relieve the Companies of its advancement or indemnification obligations under this Agreement only to the extent the Companies can establish that such omission to notify

- 3 -

resulted in actual prejudice to it, and the omission to notify such Companies will, in any event, not relieve any Company from any liability which it may have to indemnify Indemnitee otherwise than under this Agreement.  If, at the time of receipt of any such notice, the Companies have director and officer insurance policies in effect, the Companies will promptly notify the relevant insurers in accordance with the procedures and requirements of such policies.

(b)     Defense; Settlement.  Indemnitee shall have the sole right and obligation to control the defense or conduct of any claim or Proceeding with respect to Indemnitee.  The Companies shall not, without the prior written consent of Indemnitee, which may be provided or withheld in Indemnitee's sole discretion, effect any settlement of any Proceeding against Indemnitee or which could have been brought against Indemnitee or which potentially or actually imposes any cost, liability, exposure or burden on Indemnitee unless such settlement solely involves the payment of money or performance of any obligation by persons other than Indemnitee and includes an unconditional release of Indemnitee from all liability on any matters that are the subject of such Proceeding and an acknowledgment that Indemnitee denies all wrongdoing in connection with such matters.  The Companies shall not be obligated to indemnify Indemnitee against amounts paid in settlement of a Proceeding against Indemnitee if such settlement is effected by Indemnitee without the Companies' prior written consent, which consent shall not be unreasonably withheld.

(c)     Request for Advancement; Request for Indemnification.

(i)      To obtain advancement of Expenses under this Agreement, Indemnitee shall submit to the Companies a written request therefor, together with such invoices or other supporting information as may be reasonably requested by the Companies and reasonably available to Indemnitee, and, only to the extent required by applicable law which cannot be waived, an unsecured written undertaking to repay amounts advanced.  The Companies shall make advance payment of Expenses to Indemnitee no later than twenty (20) days after receipt of the written request for advancement (and each subsequent request for advancement) by Indemnitee.  If, at the time of receipt of any such written request for advancement of Expenses, the Companies have director and officer insurance policies in effect, the Companies will promptly notify the relevant insurers in accordance with the procedures and requirements of such policies.  The Companies shall thereafter keep such director and officer insurers informed of the status of the Proceeding or other claim, as appropriate to secure coverage of Indemnitee for such claim.

(ii)     To obtain indemnification under this Agreement, at any time after submission of a request for advancement pursuant to Section 9(c)(i) of this Agreement, Indemnitee may submit a written request for indemnification hereunder.  The time at which Indemnitee submits a written request for indemnification shall be determined by the Indemnitee in the Indemnitee's sole discretion.  Once Indemnitee submits such a written request for indemnification (and only at such time that Indemnitee submits such a written request for indemnification), a Determination shall thereafter be made, as provided in and only to the extent required by Section 9(d) of this Agreement.  In no event shall a Determination be made, or required to be made, as a condition to or otherwise in connection with any advancement of Expenses pursuant to Section 8 and Section 9(c)(i) of this Agreement.  If, at the time of receipt of any such request for indemnification, the Companies have director and officer insurance policies in effect, the Companies will promptly notify the relevant insurers in accordance with the procedures and requirements of such policies.

- 4 -

(d)   Determination.  The Companies agree that Indemnitee shall be indemnified to the fullest extent permitted by law and that no Determination shall be required in connection with such indemnification unless specifically required by applicable law which cannot be waived.  In no event shall a Determination be required in connection with indemnification for Expenses incurred as a witness pursuant to Section 7 of this Agreement or incurred in connection with any Proceeding or portion thereof with respect to which Indemnitee has been successful on the merits or otherwise.  Any decision that a Determination is required by law in connection with any other indemnification of Indemnitee, and any such Determination, shall be made within thirty (30) days after receipt of Indemnitee's written request for indemnification pursuant to Section 9(d)(ii) and such Determination shall be made either (i) by the Disinterested Directors, even though less than a quorum, so long as Indemnitee does not request that such Determination be made by Independent Counsel, or (ii) if so requested by Indemnitee, in Indemnitee's sole discretion, by Independent Counsel in a written opinion to the Companies and Indemnitee.  If a Determination is made that Indemnitee is entitled to indemnification, payment to Indemnitee shall be made within twenty (20) days after such Determination.  Indemnitee shall reasonably cooperate with the person, persons or entity making such determination with respect to Indemnitee's entitlement to indemnification, including providing to such person, persons or entity upon reasonable advance request any documentation or information which is not privileged or otherwise protected from disclosure and which is reasonably available to Indemnitee and reasonably necessary to such Determination.  Any Expenses incurred by Indemnitee in so cooperating with the Disinterested Directors or Independent Counsel, as the case may be, making such determination shall be advanced and borne by the Companies (irrespective of the Determination as to Indemnitee's entitlement to indemnification) and each Company is liable to indemnify and hold Indemnitee harmless therefrom.

(e)   Independent Counsel.  In the event Indemnitee requests that the Determination be made by Independent Counsel pursuant to Section 9(d) of this Agreement, the Independent Counsel shall be selected as provided in this Section 9(e).  The Independent Counsel shall be selected by Indemnitee (unless Indemnitee shall request that such selection by made by the Board of Directors, in which event the Board of Directors shall make such selection on behalf of the Companies, subject to the remaining provisions of this Section 9(e)), and Indemnitee or the Companies, as the case may be, shall give written notice to the other, advising the Companies or Indemnitee of the identity of the Independent Counsel so selected.  The Companies or Indemnitee, as the case may be, may, within ten (10) days after such written notice of selection shall have been received, deliver to Indemnitee or the Company, as the case may be, a written objection to such selection; provided, however, that such objection may be asserted only on the ground that the Independent Counsel so selected does not meet the requirements of "Independent Counsel" as defined in Section 14 of this Agreement, and the objection shall set forth with particularity the factual basis of such assertion.  Absent a proper and timely objection, the person so selected shall act as Independent Counsel.  If a written objection is so made and substantiated, the Independent Counsel so selected may not serve as Independent Counsel unless and until such objection is withdrawn or a court of competent jurisdiction has determined that such objection is without merit.  If, within twenty (20) days after submission by Indemnitee of a written request for indemnification pursuant to Section 9(c)(ii) of this Agreement, no Independent Counsel shall have been selected and not objected to, either the Companies or Indemnitee may petition a court of competent jurisdiction for resolution of any objection which

- 5 -

shall have been made by the Companies or Indemnitee to the other's selection of Independent Counsel and/or for the appointment as Independent Counsel of a person selected by the court or by such other person as the court shall designate, and the person with respect to whom all objections are so resolved or the person so appointed shall act as Independent Counsel under Section 9(d) of this Agreement.  Upon the due commencement of any judicial proceeding or arbitration pursuant to Section 9(f) of this Agreement, Independent Counsel shall be discharged and relieved of any further responsibility in such capacity (subject to the applicable standards of professional conduct then prevailing).  Any expenses incurred by Independent Counsel shall be borne by the Companies (irrespective of the Determination of Indemnitee's entitlement to indemnification) and not by Indemnitee.

   (f) <u>Consequences of Determination; Remedies of Indemnitee</u>.  The Companies shall be bound by and shall have no right to challenge a Favorable Determination.  If an Adverse Determination is made, or if for any other reason the Companies do not make timely indemnification payments or advances of Expenses, Indemnitee shall have the right to commence a Proceeding before a court of competent jurisdiction to challenge such Adverse Determination and/or to require the Companies to make such payments or advances (and the Company shall have the right to defend its position in such Proceeding and to appeal any adverse judgment in such Proceeding).  Indemnitee shall be entitled to be indemnified for all Expenses incurred in connection with such a Proceeding and to have such Expenses advanced by the Company in accordance with Section 8 of this Agreement.  If Indemnitee fails to challenge an Adverse Determination, or if Indemnitee challenges an Adverse Determination and such Adverse Determination has been upheld by a final judgment of a court of competent jurisdiction from which no appeal can be taken, then, to the extent and only to the extent required by such Adverse Determination or final judgment, the Companies shall not be obligated to indemnify or advance Expenses to Indemnitee under this Agreement.

   (g) <u>Presumptions; Burden and Standard of Proof</u>.  The parties intend and agree that, to the extent permitted by law, in connection with any Determination with respect to Indemnitee's entitlement to indemnification hereunder by any person, including a court:

   (i) it will be presumed that Indemnitee is entitled to indemnification under this Agreement, and the McGraw Entities or any other person or entity challenging such right will have the burden of proof to overcome that presumption in connection with the making by any person, persons or entity of any determination contrary to that presumption;

   (ii) the termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of *nolo contendere* or its equivalent, shall not, of itself, create a presumption that Indemnitee did not act in good faith and in a manner which Indemnitee reasonably believed to be in or not opposed to the best interests of the applicable McGraw Entity, and, with respect to any criminal action or proceeding, had reasonable cause to believe that Indemnitee's conduct was unlawful;

   (iii) Indemnitee will be deemed to have acted in good faith if Indemnitee's action is based on the records or books of account of the applicable McGraw Entity, including financial statements, or on information supplied to Indemnitee by the officers, employees, or committees of the board of directors of the applicable McGraw Entity, or on the advice of legal counsel for the applicable McGraw Entity or on information or records given in

- 6 -

reports made to the applicable McGraw Entity by an independent certified public accountant or by an appraiser or other expert or advisor selected by the applicable McGraw Entity; and

> (iv)     the knowledge and/or actions, or failure to act, of any director, officer, agent or employee of any of the McGraw Entities or relevant enterprises will not be imputed to Indemnitee in a manner that limits or otherwise adversely affects Indemnitee's rights hereunder.

The provisions of this Section 9(g) shall not be deemed to be exclusive or to limit in any way the other circumstances in which Indemnitee may be deemed to have met the applicable standard of conduct set forth in this Agreement.

10.     Insurance; Subrogation; Other Rights of Recovery, etc.

(a)     Each Company shall use its reasonable best efforts to purchase and maintain a policy or policies of insurance with reputable insurance companies with A.M. Best ratings of "A" or better, providing Indemnitee with coverage for any liability asserted against, and incurred by, Indemnitee or on Indemnitee's behalf by reason of Indemnitee's Corporate Status, or arising out of Indemnitee's status as such, whether or not any such Company would have the power to indemnify Indemnitee against such liability.  Such insurance policies shall have coverage terms and policy limits at least as favorable to Indemnitee as the insurance coverage provided to any other director or officer of the Companies.  If an Company has such insurance in effect at the time it receives from Indemnitee any notice of the commencement of an action, suit, proceeding or other claim, such Company shall give prompt notice of the commencement of such action, suit, proceeding or other claim to the insurers in accordance with the procedures set forth in the policy.  The Company shall thereafter take all necessary or desirable action to cause such insurers to pay, on behalf of Indemnitee, all amounts payable as a result of such action, suit, proceeding or other claim in accordance with the terms of such policy.  The Company shall continue to provide such insurance coverage to Indemnitee for a period of at least six (6) years after Indemnitee ceases to serve as a director or officer or any other present Corporate Status.

(b)     In the event of any payment by any Company under this Agreement, such Company shall be subrogated to the extent of such payment to all of the rights of recovery of Indemnitee against any other McGraw Entity, and Indemnitee hereby agrees, as a condition to obtaining any advancement or indemnification from the Companies, to assign to such Company all of Indemnitee's rights to obtain from such other McGraw Entity such amounts to the extent that they have been paid by such Company to or for the benefit of Indemnitee as advancement or indemnification under this Agreement and are adequate to indemnify Indemnitee with respect to the costs, Expenses or other items to the full extent that Indemnitee is entitled to indemnification or other payment hereunder; and Indemnitee will (upon request by the Companies) execute all papers required and take all action necessary to secure such rights, including execution of such documents as are necessary to enable such Company to bring suit or enforce such rights.

(c)     Each of the Companies hereby unconditionally and irrevocably waives, relinquishes and releases, and covenants and agrees not to exercise (and to cause each of the other McGraw Entities not to exercise), any rights that such Company may now have or hereafter acquire against the Indemnitee that arise from or relate to the existence, payment, performance or enforcement of the Companies' obligations under this Agreement or under any other indemnification agreement (whether pursuant to contract, by-laws or charter) with any person or

- 7 -

entity, including, without limitation, any right of subrogation (whether pursuant to contract or common law), reimbursement, exoneration, contribution or indemnification, or to be held harmless, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, including, without limitation, the right to take or receive from the Indemnitee, directly or indirectly, in cash or other property or by set-off or in any other manner, payment or security on account of such claim, remedy or right.

(d)     The Companies shall not be liable to pay or advance to Indemnitee any amounts otherwise indemnifiable under this Agreement or under any other indemnification agreement if and to the extent that Indemnitee has otherwise actually received such payment under any insurance policy, contract, agreement or otherwise; provided, however, that (i) the Companies hereby agree that they are the indemnitors of first resort under this Agreement and under any other indemnification agreement (i.e., their obligations to Indemnitee under this Agreement or any other agreement or undertaking to provide advancement and/or indemnification to Indemnitee are primary and any obligation of a third party indemnitor (or any affiliate thereof other than an Company) to provide advancement or indemnification for the same Expenses, liabilities, judgments, penalties, fines and amounts paid in settlement (including all interest, assessments and other charges paid or payable in connection with or in respect of such Expenses, liabilities, judgments, penalties, fines and amounts paid in settlement) incurred by Indemnitee are secondary), and (ii) if the third party indemnitor (or any affiliate thereof other than a McGraw Entity) pays or causes to be paid, for any reason, any amounts otherwise indemnifiable hereunder or under any other indemnification agreement (whether pursuant to contract, by-laws or charter) with Indemnitee, then (x) the third party indemnitor (or such affiliate, as the case may be) shall be fully subrogated to all rights of Indemnitee with respect to such payment and (y) the Companies shall fully indemnify, reimburse and hold harmless the third party indemnitor (or such other affiliate) for all such payments actually made by the third party indemnitor (or such affiliate).

(e)     The Companies' obligation to indemnify or advance Expenses hereunder to Indemnitee in respect of or relating to Indemnitee's service at the request of any of the Companies as a director, officer, employee, fiduciary, representative, partner or agent of any other McGraw Entity shall be reduced by any amount Indemnitee has actually received as payment of indemnification or advancement of Expenses from such other McGraw Entity, except to the extent that such indemnification payments and advance payment of Expenses when taken together with any such amount actually received from other McGraw Entities or under director and officer insurance policies maintained by one or more McGraw Entities are inadequate to fully pay all costs, Expenses or other items to the full extent that Indemnitee is otherwise entitled to indemnification or other payment hereunder.

(f)     Except for the rights set forth in Sections 10(c), 10(d) and 10(e) of this Agreement, the rights to indemnification and advancement of Expenses as provided by this Agreement shall not be deemed exclusive of any other rights to which Indemnitee may at any time, whenever conferred or arising, be entitled under applicable law, under the McGraw Entities' Certificates of Incorporation or By-Laws, or under any other agreement, vote of stockholders or resolution of directors of any McGraw Entity, or otherwise. Indemnitee's rights under this Agreement are present contractual rights that fully vest upon Indemnitee's first service as a director or officer of any of the Companies. The Parties hereby agree that Sections 10(c), 10(d) and 10(e) of this Agreement shall be deemed exclusive and shall be deemed to modify,

amend and clarify any right to indemnification or advancement provided to Indemnitee under any other contract, agreement or document with any McGraw Entity.

(g)    No amendment, alteration or repeal of this Agreement or of any provision hereof shall limit or restrict any right of Indemnitee under this Agreement in respect of any action taken or omitted by such Indemnitee in Indemnitee's Corporate Status prior to such amendment, alteration or repeal.  To the extent that a change in applicable law, whether by statute or judicial decision, permits greater indemnification or advancement of Expenses than would be afforded currently under the McGraw Entities' Certificates of Incorporation or By-Laws and this Agreement, it is the intent of the parties hereto that Indemnitee enjoy by this Agreement the greater benefits so afforded by such change.  The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other right or remedy.

11.    <u>Employment Rights; Successors; Third Party Beneficiaries</u>.

(a)    This Agreement shall not be deemed an employment contract between the Companies and Indemnitee. This Agreement shall continue in force as provided above after Indemnitee has ceased to serve as a director and/or officer of the Companies or any other Corporate Status.

(b)    This Agreement shall be binding upon each of the Companies and their successors and assigns and shall inure to the benefit of Indemnitee and Indemnitee's heirs, executors and administrators.

12.    <u>Severability</u>.  If any provision or provisions of this Agreement shall be held to be invalid, illegal or unenforceable for any reason whatsoever:  (a) the validity, legality and enforceability of the remaining provisions of this Agreement (including without limitation, each portion of any Section of this Agreement containing any such provision held to be invalid, illegal or unenforceable, that is not itself invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby; (b) such provision or provisions shall be deemed reformed to the extent necessary to conform to applicable law and to give the maximum effect to the intent of the parties hereto; and (c) to the fullest extent possible, the provisions of this Agreement (including, without limitation, each portion of any Section of this Agreement containing any such provision held to be invalid, illegal or unenforceable, that is not itself invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested thereby.

13.    <u>Exception to Right of Indemnification or Advancement of Expenses</u>.  Notwithstanding any other provision of this Agreement and except as provided in <u>Section 7(a)</u> of this Agreement or as may otherwise be agreed by any Company, Indemnitee shall not be entitled to indemnification or advancement of Expenses under this Agreement with respect to any Proceeding brought by Indemnitee (other than a Proceeding by Indemnitee (i) by way of defense or counterclaim, (ii) to enforce Indemnitee's rights under this Agreement or (iii) to enforce any other rights of Indemnitee to indemnification, advancement or contribution from the Companies under any other contract, by-laws or charter or under statute or other law, unless the bringing of such Proceeding or making of such claim shall have been approved by the Board of Directors of the applicable Company.

14.    <u>Definitions</u>.  For purposes of this Agreement:

- 9 -

(a)    "Board of Directors" means the board of directors of the Company.

(b)    "Certificate of Incorporation" means, with respect to any entity, (i) in the case of any Company, its certificate of incorporation or (ii) in the case of any other entity, its certificate of incorporation, articles of incorporation or similar constituting document.

(c)    "Corporate Status" describes the status of a person by reason of such person's past, present or future service as a director or officer of any of the Companies (including, without limitation, one who serves at the request of any of the Companies as a director, officer, employee, fiduciary or agent of any other McGraw Entity).

(d)    "Determination" means a determination that either (x) there is a reasonable basis for the conclusion that indemnification of Indemnitee is proper in the circumstances because Indemnitee met a particular standard of conduct (a "Favorable Determination") or (y) there is no reasonable basis for the conclusion that indemnification of Indemnitee is proper in the circumstances because Indemnitee met a particular standard of conduct (an "Adverse Determination"). An Adverse Determination shall include the decision that a Determination was required in connection with indemnification and the decision as to the applicable standard of conduct.

(e)    "Disinterested Director" means director of the Company who is not and was not a party to the Proceeding in respect of which indemnification is sought by Indemnitee.

(f)    "Expenses" shall mean all reasonable direct and indirect costs, fees and expenses of any type or nature whatsoever and shall specifically include, without limitation, all reasonable attorneys' fees, retainers, court costs, transcript costs, fees and costs of experts, witness fees, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees, and all other disbursements or expenses of the types customarily incurred in connection with prosecuting, defending, preparing to prosecute or defend, investigating, being or preparing to be a witness, in, or otherwise participating in, a Proceeding, including, but not limited to, the premium for appeal bonds, attachment bonds or similar bonds and all interest, assessments and other charges paid or payable in connection with or in respect of any such Expenses, and shall also specifically include, without limitation, all reasonable attorneys' fees and all other expenses incurred by or on behalf of Indemnitee in connection with preparing and submitting any requests or statements for indemnification, advancement, contribution or any other right provided by this Agreement. Expenses, however, shall not include amounts paid in settlement by Indemnitee or the amounts of judgments or fines against Indemnitee.

(g)    "Independent Counsel" means, at any time, any law firm, or a member of a law firm, that (a) is experienced in matters of corporation law and (b) is not, at such time, or has not been in the five years prior to such time, retained to represent: (i) any McGraw Entity or Indemnitee in any matter material to either such party (other than with respect to matters concerning Indemnitee under this Agreement, or of other indemnities under similar indemnification agreements), or (ii) any other party to the Proceeding giving rise to a claim for indemnification hereunder. Notwithstanding the foregoing, the term "Independent Counsel" shall not include any person who, under the applicable standards of professional conduct then prevailing, would have a conflict of interest in representing either the Companies or Indemnitee in an action to determine Indemnitee's rights under this Agreement. The Companies agree to pay the reasonable fees and expenses of the Independent Counsel referred to above and to fully

- 10 -

indemnify such counsel against any and all Expenses, claims, liabilities and damages arising out of or relating to this Agreement or its engagement pursuant hereto and to be jointly and severally liable therefor.

(h)   "McGraw Entity" means any Company, any of their respective subsidiaries and any other corporation, partnership, limited liability company, joint venture, trust, employee benefit plan or other enterprise with respect to which Indemnitee serves as a director, officer, employee, partner, representative, fiduciary or agent, or in any similar capacity, at the request of any Company.

(i)   "Proceeding" includes any actual, threatened, pending or completed action, suit, arbitration, alternate dispute resolution mechanism, investigation, inquiry, administrative hearing or any other actual, threatened, pending or completed proceeding, whether brought by or in the right of any Company or otherwise and whether civil, criminal, administrative or investigative in nature, in which Indemnitee was, is, may be or will be involved as a party, witness or otherwise, by reason of Indemnitee's Corporate Status or by reason of any action taken by Indemnitee or of any inaction on Indemnitee's part while acting as director or officer of any McGraw Entity (in each case whether or not he is acting or serving in any such capacity or has such status at the time any liability or expense is incurred for which indemnification or advancement of Expenses can be provided under this Agreement).

(j)   Construction.  Whenever required by the context, as used in this Agreement the singular number shall include the plural, the plural shall include the singular, and all words herein in any gender shall be deemed to include (as appropriate) the masculine, feminine and neuter genders.

15.   Reliance.  The Companies expressly confirm and agree that they have entered into this Agreement and assumed the obligations imposed on each of them hereby in order to induce Indemnitee to serve as a director and/or officer of the Companies, and the Companies acknowledge that Indemnitee is relying upon this Agreement in serving as a director and/or officer of the Companies.

16.   Modification and Waiver.  No supplement, modification or amendment of this Agreement shall be binding unless executed in a writing identified as such by both of the parties hereto.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar) nor shall such waiver constitute a continuing waiver.

17.   Notice Mechanics.  All notices, requests, demands or other communications hereunder shall be in writing and shall be deemed to have been duly given if (i) delivered by hand and receipted for by the party to whom said notice or other communication shall have been direct, or (ii) mailed by certified or registered mail with postage prepaid, on the third business day after the date on which it is so mailed:

- 11 -

(a)     If to Indemnitee to:

> 5 Redberry Ridge
> Portola Valley, CA 94028

>         with a copy to:        Such counsel as the Indemnitee may from time to time designate to the Company in writing.

(b)     If to any Company, to the attention of the Chairman of the Board of Directors of such Company, at the following address:

> 3601 Haven Avenue
> Menlo Park, CA 94025

>         with a copy to:        Address of Company counsel as contained in the books and records of the Company

or to such other address as may have been furnished (in the manner prescribed above) as follows: (a) in the case of a change in address for notices to Indemnitee, furnished by Indemnitee to the Companies and (b) in the case of a change in address for notices to any Company, furnished by the Companies to Indemnitee.

18.     <u>Contribution</u>.  To the fullest extent permissible under applicable law, if the indemnification provided for in this Agreement is unavailable to Indemnitee for any reason whatsoever, the Companies, in lieu of indemnifying Indemnitee, shall contribute to the amount incurred by Indemnitee, whether for judgments, fines, penalties, excise taxes, amounts paid or to be paid in settlement and/or for reasonably incurred Expenses, in connection with any claim relating to an indemnifiable event under this Agreement, in such proportion as is deemed fair and reasonable in light of all of the circumstances of such Proceeding in order to reflect (i) the relative benefits received by the Companies and Indemnitee as a result of the event(s) and/or transaction(s) giving cause to such Proceeding; and/or (ii) the relative fault of the Companies (and their other directors, officers, employees and agents) and Indemnitee in connection with such event(s) and/or transaction(s).

19.     <u>Governing Law; Submission to Jurisdiction; Appointment of Agent for Service of Process</u>.  This Agreement and the legal relations among the parties shall, to the fullest extent permitted by law, be governed by, and construed and enforced in accordance with, the laws of the State of California, without regard to its conflict of laws rules.  The Companies and Indemnitee hereby irrevocably and unconditionally irrevocably and unconditionally submit to the jurisdiction of the federal or state courts located in the Northern District of California for the purpose of any suit, action or other proceeding arising out of or based upon this Agreement, (b) agree not to commence any suit, action or other proceeding arising out of or based upon this Agreement except in the federal or state courts located in the Northern District of California, and (c) hereby waive, and agree not to assert, by way of motion, as a defense, or otherwise, in any such suit, action or proceeding, any claim that it is not subject personally to the jurisdiction of the above-named courts, that its property is exempt or immune from attachment or execution, that the suit, action or proceeding is brought in an inconvenient forum, that the venue of the suit,

29680747_1

action or proceeding is improper or that this Agreement or the subject matter hereof may not be enforced in or by such court.

20. <u>Headings</u>.  The headings of the paragraphs of this Agreement are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction thereof.

21. <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall for all purposes be deemed to be an original but all of which together shall constitute one and the same Agreement.

*[Remainder of Page Intentionally Blank]*

29680747_1

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year first above written.

**Companies:**

Western Service Contract Corp.

By: _____
Name: _____
Title: _____

The McGraw Company

By: _____
Name: _____
Title: _____

Pacific Specialty Insurance Company

By: _____
Name: _____
Title: _____

**Indemnitee:**

_____
Name: John M. McGraw

[Signature Page to Indemnification Agreement]